# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Brian C. Morgan,**
**Petitioner Below, Petitioner**

**vs.)  No. 11-1677** (Jackson County 10-C-67)

**David Ballard, Warden,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

**FILED**

**January 14, 2013**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

## MEMORANDUM DECISION

Petitioner Brian C. Morgan, by counsel Matthew A. Victor, appeals the November 19, 2011 order of the Circuit Court of Jackson County denying his petition for writ of habeas corpus. Respondent Ballard, by counsel Robert D. Goldberg, filed a response, to which petitioner has filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Revised Rules of Appellate Procedure.

Following a jury trial, petitioner was convicted of five counts of first degree sexual assault and ten counts of possession of child pornography related to a pattern of sexual contact with a minor relative, including the taking of pornographic pictures of the child. By order entered on June 11, 2008, and corrected by entry of an order on March 24, 2009, petitioner was sentenced to a combined term of thirty-four to seventy-four years of incarceration for his convictions. Thereafter, petitioner appealed his criminal convictions, though this Court refused the petition for appeal by order entered on October 29, 2009. Petitioner then filed, *pro se*, a petition for writ of habeas corpus and the circuit court appointed Matthew Victor to represent petitioner in his circuit court habeas proceeding. An amended petition was filed, after which the circuit court held an omnibus evidentiary hearing on February 14, 2011. By order entered on November 19, 2011, the circuit court denied the petition for habeas relief.

On appeal, petitioner alleges that it was error for the circuit court to deny his petition for writ of habeas corpus. In support, petitioner re-alleges the grounds for relief raised in his circuit court petition. Specifically, petitioner alleges that he received ineffective assistance of counsel at every stage of the proceedings below, resulting in the following errors: failure to seek an independent mental competency, criminal responsibility and diminished capacity evaluation; failure to protest petitioner's desire to testify, resulting in disastrous testimony; failure to hold a hearing on voluminous evidence which petitioner believed should have been excluded pursuant

to Rule 404(b) of the West Virginia Rules of Evidence; failure to require notice of the alleged Rule 404(b) evidence; failure to recognize problems with petitioner's confession as addressed in *Missouri v. Seibert*, 542 U.S. 600 (2004); allowing Dr. Ralph Smith to perform the competency and criminal responsibility evaluation and draft the post-trial report; failure to raise issues of prompt presentment; abandonment of petitioner's motion to examine the victim; failure to interview the victim; failure to challenge the seating of biased jurors; introduction of evidence of an additional assault upon the victim by petitioner; and failure to argue that conviction of ten counts of possession of child pornography, in violation of West Virginia Code § 61-8C-3, should have been limited to one count, thereby exposing petitioner to double jeopardy.

Respondent argues that the circuit court did not err in denying the petition for habeas relief and that there is no evidence to support the assertion that petitioner suffered from a mental illness or defect which rendered him incompetent to stand trial or incompetent at the time of the offense. According to respondent, petitioner was competent and his confession was entirely admissible because it was voluntary, knowing, and intelligent. Further, respondent argues that the evidence of which petitioner complains does not fall under the ambit of Rule 404(b) of the West Virginia Rules of Evidence. According to respondent, petitioner also failed to establish that he received ineffective assistance of counsel because he could not satisfy either prong of the *Strickland* test. Lastly, respondent argues that West Virginia Code § 61-8C-3 is not facially void for vagueness nor did it subject petitioner to double jeopardy.

This Court has previously held that

> [i]n reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006). After careful consideration of the parties' arguments, this Court concludes that the circuit court did not abuse its discretion in denying the petition for writ of habeas corpus. Having reviewed the circuit court's "Judgment Order" entered on November 19, 2011, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to the assignments of error raised in this appeal.[1] The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.

For the foregoing reasons, we find no error in the decision of the circuit court and its November 19, 2011 order denying the petition for writ of habeas corpus is affirmed.

---

[1] The Court does not address any interpretation of West Virginia Code § 61-8C-3.

Affirmed.

**ISSUED:** January 14, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

IN THE CIRCUIT COURT OF JACKSON COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA *ex rel*
BRIAN C. MORGAN,
        Petitioner,

vs.

      Habeas Corpus Case No. 10-C-67
      (THOMAS C. EVANS, III, JUDGE)

DAVID BALLARD, WARDEN,
MOUNT OLIVE CORRECTIONAL COMPLEX,
        Respondent

## JUDGMENT ORDER

Pending for decision is the Amended Petition for a writ of habeas corpus. The court has considered the Amended Petition, together with the response thereto. In addition, the court has before it the testimony of respondent's witnesses (William D. Bostic, Esq.) in open court. The petitioner offered no evidence. Further, the evidentiary record of this case is supplemented by matters of record in the case of "State of West Virginia v. Brian C. Morgan," Case No. 07-F-46 of this court, of which the court takes judicial notice.

Upon consideration of all of the evidence, the Court makes the following Findings of Fact (found by a preponderance of the evidence) and Conclusions of Law:

1. Petitioner Brian C. Morgan is confined in the custody of the Warden of the Mt Olive Correctional Facility, Fayette County, West Virginia, based upon a sentencing order entered by this court on June 11, 2008, (as corrected on March 24, 2009), in Case No. 07-F-46, sentencing him to a combined term of thirty-four (34) years to seventy-four (74) years for his conviction for five (5) counts of First-Degree Sexual Assault and ten (10) counts of Possession of Child Pornography.

881

2. In the underlying case, Petitioner was represented by William D. Bostic, who was appointed by this court. Petitioner Morgan pleaded "not guilty" to each count in the indictment. He was tried and convicted by a twelve-member Jackson County petit jury. Petitioner Morgan testified on his own behalf at the trial of his case, against the advice of his counsel.

3. On July 10, 2009, Petitioner Morgan, through his counsel J. L. Hickok, Appellate Advocacy Division, Public Defender Services, filed a petition with the West Virginia Supreme Court of Appeals for a direct appeal from the Jackson County Circuit Court judgment of conviction, based upon the following asserted trial errors: the inadmissibility of his statement to police based upon the assertions that: (a) his statement was involuntary because he was in "custody"; (b) he had a diminished capacity to understand that the police taking his statement; (c) his answers to police indicated that he was not voluntarily confessing; and (d) use of his involuntary statement against him was a denial of due process.

4. The petition for appeal was denied and no review of the above-mentioned grounds was afforded the petitioner.

5. On or about May 21, 2010, Petitioner Morgan filed a habeas corpus petition attacking legality of his confinement pursuant to these convictions. The said petition was filed with this court and was assigned Case No. 10-C-67.

6. The grounds raised by Petitioner Brian C. Morgan, pro se, in his 2010 petition were:

a) The Prosecuting Attorney and the Trial Court violated the Petitioners' right against double jeopardy when Petitioner was indicted, tried, convicted, and sentenced for ten (10) separate counts of Possession of Child Pornography;

2

b) The Petitioner was denied a fair and impartial trial when prospective jurors that should have been excused where admitted to the jury panel;

c) The Petitioner was denied a fair and impartial trial when a recording of the petitioner's involuntary statement was played to the jury;

d) The Petitioner was denied meaningful and effective assistance of counsel through his defense counsel's acts of commission and omission; and

e) The charging method employed by the State of West Virginia denied Petitioner fair notice of the charges against him and denied him an adequate opportunity to prepare a defense.

7. On June 1, 2010, the Court appointed Matthew A. Victor, Esq., to represent Petitioner Brian Morgan in his habeas proceedings. Mr. Victor filed a motion to schedule a *Losh* hearing and for a briefing schedule.

8. On June 28, 2010, Mr. Victor filed an amended petition for a writ of habeas corpus *ad subjiciendum*. The amended petition had previously been reviewed by the Petitioner and reviewed again on the same day the *Losh* hearing was conducted. The Petitioner appeared by video teleconference. The Petitioner testified that he met with his counsel, Mr. Victor, and discussed the amended petition. After the Court and Mr. Victor made inquiry of the Petitioner, the Court found that the Petitioner was fully advised of his rights regarding the omnibus hearing process, and with advice of counsel, he voluntarily, intelligently, and knowingly waived all habeas grounds not contained in the instant *amended petition for writ of habeas corpus* prepared by Mr. Victor. Specifically, Petitioner understood that the grounds not raised in the amended petition, addressed during the *Losh* hearing, were forever waived and relinquished by the Petitioner.

3

88؛

9. The amended petition filed by Petitioner's counsel Matthew A. Victor, Jackson County Circuit Court Case No.10-C-67, alleges that Brian C. Morgan is being held unlawfully due to "ineffective assistance of counsel at, practically, every stage of the proceedings" that resulted in the following:

a. the conviction was obtained because Petitioner's defense counsel failed to seek and secure an independent mental competency, criminal responsibility and diminished capacity evaluation of the Petitioner;

b. the conviction was obtained because Petitioner's defense counsel failed to protest Petitioner's desire to testify, testimony that had disastrous results;

c. the conviction was obtained because there was no hearing upon voluminous WVRE Rule 404(b) evidence introduced at trial, including the Petitioner's masturbation, anal sex with the victim, additional uncharged sexual-assault conduct, threats to the child victim, physical violence towards the child victim, and harassment of the child victim and his siblings;

d. the conviction was obtained because the State of West Virginia was not required to provide notice of the WVRE Rule 404(b) evidence referred to above;

e. the conviction was obtained because the Petitioner's trial counsel did not recognize issues with the Petitioner's confession as addressed in Missouri v Seibert, 542 U. S. 600 (2004);

f. Dr. Ralph Smith should not have conducted the competency and criminal responsibility evaluation, *and* the post-trial report contemplated by WV Code § 62-12-2(e);

g. the conviction was obtained because the Petitioner's trial counsel did not argue the prompt presentment issue;

h. the conviction was obtained because the Petitioner's trial counsel abandoned his motion to examine the victim;

i. the conviction was obtained because the Petitioner's trial counsel made no attempt to interview the victim;

j. the conviction was obtained because the Petitioner's trial counsel failed to challenge the seating of the biased jurors;

4

k.    the conviction was obtained because the Petitioner's trial counsel introduced an additional assault upon the victim at the victim's grandmother's residence;

l.    the Petitioner's trial counsel should have argued that the indictment, trial, and conviction for ten (10) counts of Possession of Child Pornography "materials" should have been for just (1) count of Possession of Child Pornography "materials", thereby exposing the Petitioner to double jeopardy

10.    The record in Case No. 10-C-67, demonstrates that Brian C. Morgan acknowledged the grounds for the Petition and testified that he discussed the *Losh* list, by which the petitioner has waived any ground for relief not affirmatively presented herein in paragraph 9 (a) through (l).

11.    The relevant facts relating to these grounds are as follows:

The victim in this case,        , the Petitioner's cousin, is a male child born

, and at the time of trial he was eleven (11) years old.  The Petitioner, Brian C. Morgan was born October 7, 1973, and at the time of the trial he was thirty-fours (34) years old.  The trial of this matter was held in October, 2008.

The Petitioner lived with his parents and        . lived with his father, step-mother, and five siblings.  The victim's paternal grandmother also resided in her own residence next door to the victim's home.

During the years 2001, and through June, 2007, the Petitioner performed fellatio upon the victim at least five times and photographed the victim at least ten times with a "Polaroid camera" (and later a digital camera) when the victim was nude or in various stages of undress, and after the Petitioner had undressed the victim.  The photographs

5

were secreted away at the Petitioner's parent's home. The Petitioner also rubbed his penis along the victim's anus and had the victim lay upon him when they were nude. The Petitioner would masturbate and ejaculate in front of the victim. These acts took place in the Petitioner's parent's home in the basement, in the "junk" room, and the Petitioner performed fellatio upon the victim once in the grandmother's home.

Over the course of time the victim's stepmother noticed that the Petitioner seemed to pay      , more attention than the other children. Petitioner's fondness of became a notable obsession that progressed to a point when the victim's stepmother and others took precautions to insure that the Petitioner and the victim were not left alone together. Finally the victim's stepmother sought a restraining order from a magistrate who inquired if there had been any actual criminal offense. The stepmother was unaware of any actual touching and replied "No, not as I know of". Then the victim asked his stepmother what the magistrate had done and when she stated that she told the magistrate that the Petitioner had not "touched" any of the children the victim stated "Yes he did". Later, when she was alone with the victim she asked the victim if the Petitioner had touched him under his underwear and when he answered in the affirmative she then called the Jackson County Sherriff's Department.

The victim was interviewed on June 7, 2007, and gave detailed information concerning the locations where the assaults took place and where the photographs were taken (the "junk" room in the Defendant's residence and in the victim's grandmother's garage). On June 8, 2007, Sherriff deputies Captain Herb Faber and Lieutenant Tony Boggs took a statement from the Petitioner and conducted a search of the Petitioner's residence, pursuant to a search warrant. (The grandmother's residence

6

was not searched.) The Petitioner's mother was home and the Petitioner was in an outbuilding when the Deputies arrived.

The Confession Issues Raised by Petitioner

As stated above, Petitioner argues that:

e.   the conviction was obtained because the Petitioner's trial counsel did not recognize issues with the Petitioner's confession as addressed in *Missouri v Seibert*, 542 U. S. 600 (2004); and

g.   the conviction was obtained because the Petitioner's trial counsel did not argue the prompt presentment issue:

The Petitioner asserts that Mr. Bostic should have challenged Petitioner's confession under *Missouri v. Siebert*, 542 U.S. 600 (2004), which discusses "sequential confessions" in a custodial interrogation setting. Rather, it just presents the application of preexisting law to a different set of facts.

The Supreme Court's opinion in *Siebert* was, on its face, designed to address and remedy the then common practice of a "question first, warn later" custodial interrogation strategy that was being used by investigators. *Siebert*, 542 U.S. at 606. Under such a strategy, investigators intentionally questioned a suspect who was in custody, without reading the suspect his/her rights, and then, after a confession is obtained, warning the suspect and re-taking the confession.

In *Siebert*, both the pre-*Miranda* statements and the post-*Miranda* statements were taken from a suspect <u>after the suspect was arrested and placed in custody at the police station</u>. *Siebert*, 542 U.S. at 605. Moreover, the officers deliberately employed a "question-first strategy" as a calculated strategy to elicit a confession. *Siebert*, 542 U.S. at 606. In deciding that this practice was inappropriate, the U.S. Supreme Court wanted to prohibit an "end run" around Miranda. *Siebert*, 542 U.S. at 606.

7

Here, however, the facts do not in any way support the Petitioner's contentions regarding *Seibert* or the "Prompt Presentment Rule." Petitioner has not produced any testimony or documentary evidence to support the allegation that *Seibert* issues were ever present in this matter. Petitioner did not confess or reveal any material facts to Lieutenant Boggs prior to the "Miranda" warnings being read to the Petitioner. Petitioner was not interviewed, then "Mirandized", and then encouraged to repeat a confession such as is prohibited under *Seibert*. (Tr., p. 316). Lieutenant Boggs spoke briefly to the Petitioner while the Petitioner stepped away from Captain Faber and the Petitioner's mother, to urinate.(Id., at p. 378). The conversation that took place outside the hearing of others, according to Lieutenant Boggs, was that Boggs told the Petitioner why the police were at his home. (Id., at p. 318). In the October 1, 2007, suppression hearing, Capt. Faber testified that the Petitioner was free to leave up to the point that Petitioner was read the *Miranda* warnings. (Oct. 1, 2007, suppression hearing, p. 8). Petitioner was not under arrest and he was not handcuffed. (The February 14, 2011, Omnibus Hearing transcript, p. 55). He was directed to a police car to be interviewed by Captain Faber and Lieutenant Boggs, away from his mother and the house that was being searched by other officers. The transcript and audio recording of the interview conducted by Captain Faber and Lieutenant Boggs clearly shows that the Petitioner had not confessed anything until well into the interview. In fact, the Petitioner initially denies any wrong doing in the early stages of the interview and then tried to minimize his actions, before he actually confessed. The interview began within a few minutes after police arrived and advised the Petitioner of his "Miranda" rights. Lieutenant Boggs testified at trial that he and Captain Faber arrived at the Petitioner's home at about

8

11:10 am on June 8, 2007.(Tr., pp. 317, 378). The transcript of the interview reveals that Captain Faber vouched the recording of the interview by stating the date and time, June 8, 2007, and 11:26 am. The recorded interview concluded with Lieutenant Boggs vouching the record at the conclusion of the interview at 12:05 pm. The police were with the Petitioner for less than hour. Only after he confessed was he arrested and charged. (Oct. 1, 2007, suppression hearing, p.13).

The court is of the opinion that Petitioner has failed to establish by a preponderance of the evidence that he did not receive effective assistance of counsel in connection with any *Seibert* issues. The court is also of the opinion that Petitioner has failed to establish that he did not receive effective assistance of counsel because his trial defense counsel did not raise any prompt presentment issues. There simply are no facts to even suggest *Seibert* or Prompt Presentment Rule violations.

Any delay came subsequent to the confession; there is no credible evidence that Petitioner was under arrest until after he confessed to the murder, and the "prompt presentment" rule was, therefore, not violated. Certainly, one cannot say that Petitioner's confession is attributable to delay in presenting Petitioner to a Magistrate in Jackson County. *See State v. Newcomb*, 223 W. Va. 843, 679 S.E.2d 675(2009)("Ordinarily, the delay in taking an accused who is under arrest to a magistrate after a confession has been obtained from him does not vitiate the confession under the prompt presentment rule.")

In syllabus point 5 of *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242 (1975), the Court stated:

> The State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to

9

admissions of part or all of an offense were voluntary before such may be admitted into the evidence of a criminal case.

"[T]he voluntariness of a confession is an inquiry that must be gauged by the totality of the circumstances under which it was given including the background, experience and conduct of the accused." *State v. Lopez*, 197 W. Va. 556, 476 S.E.2d 227, 236 (1996). "Whether an extrajudicial inculpatory statement is voluntary or the result of coercive police activity is a legal question to be determined from a review of the totality of the circumstances" surrounding the confession. Syl. Pt. 2, *State v. Bradshaw*, 193 W.Va. 519, 457 S.E.2d 456 (1995). However, even when the totality of circumstances shows that "[m]isrepresentations ... or other deceptive practices [were employed] by police officers...[, a confession will not be invalidated unless it is shown that the deception] affected ... [the] voluntariness or reliability [of the statement]." Syl. Pt. 6, *State v. Worley*, 179 W.Va. 403, 369 S.E.2d 706 (1988); see also Syl. Pt. 7, *State v. Farley*, 192 W.Va. 247, 452 S.E.2d 50 (1994).

In *State v. Adkins*, 170 W.Va. 46, 289 S.E.2d 720 (1982), the Court addressed the issue of a defendant's inability to understand the Miranda warnings due to intellectual limitations and explained that "[i]t is the general rule that the intelligence of a person making a confession is but one factor to be considered in determining whether a waiver of rights was voluntary." 170 W.Va. at 53, 289 S.E.2d at 727. The Adkins Court examined a situation under which a person lacks the capacity to understand the meaning of his statement. This Court concluded that "where the defendant's lower than normal intelligence is not shown clearly to be such as would impair his capacity to understand the meaning and effect of his confession, said lower than normal

10

intelligence is but one factor to be considered by the trial judge in weighing the totality of the circumstances surrounding the challenged confession." *Id.* at 54, 289 S.E.2d at 727.

The court finds by a preponderance of the evidence that under the totality of the circumstances on June 8, 2007, the confession of the Petitioner Morgan was voluntary. Further, it was not the product of a violation of *Missouri v Seibert*, 542 U. S. 600 (2004) simply because the police made no inquiries of the Petitioner before advising him of his *Miranda* rights; and because Petitioner was not under arrest until <u>after</u> he confessed to the sexual offenses; conversely, the court finds that Petitioner voluntarily spoke to the police when he was questioned. The court also finds no violation of Petitioner's right to remain silent, inasmuch as he was advised of his rights on the June 8, 2007, and acknowledged that he understood his rights and waived those rights.

The court finds by a preponderance of the evidence that there is simply no factual basis for the prompt presentment issue argument propounded by the Petitioner. The police were at the Petitioner's home for less than an hour before they *concluded* the interview where Petitioner confessed.

For the above stated reasons, this court cannot find, by a preponderance of the evidence, that the Petitioner's trial counsel was ineffective.

"Independent" Mental Exam Issues Raised by Petitioner

As stated above, Petitioner argues that:

a. the conviction was obtained because Petitioner's defense counsel failed to seek and secure an independent mental competency, criminal responsibility and diminished capacity evaluation of the Petitioner;

11

891

The West Virginia Supreme Court of Appeals has recognized that defendants can only be tried when they are mentally competent. See *State v. Cheshire,* 170 W.Va. 217, at 219-220, 292 S.E.2d 628, at 630 (W.Va.,1982);

"It is a fundamental guaranty of due process that a defendant cannot be tried or convicted for a crime while he or she is mentally incompetent. *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *State v. Demastus,* 165 W.Va. 572, 270 S.E.2d 649 (1980); *State v. Milam,* 159 W.Va. 691, 226 S.E.2d 433 (1976); *State v. Arnold,* 159 W.Va. 158, 219 S.E.2d 922 (1975), *overruled on other grounds, State v. Demastus, supra; State v. Harrison,* 36 W.Va. 729, 15 S.E. 982 (1892). "To be competent to stand trial, a defendant must exhibit a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational,*220 as well as factual, understanding of the proceedings against him." Syllabus Point 4, *State ex rel. Williams v. Narick,* 164 W.Va. 632, 264 S.E.2d 851 (1980); Syllabus Point 2, *State v. Arnold, supra ; see also, Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)."

In the amended petition filed by Mr. Victor, it is alleged that trial counsel was ineffective, in part, because counsel failed to move the court for an "independent" psychological and psychiatric examination to determine whether Petitioner Morgan was mentally competent to stand trial and whether he was criminally responsible for the charged sex offenses. Mr. Victor is aware that that one examination was conducted, but he asserts that it was not "independent", and that Mr. Bostic was ineffective because he did not request yet a second examination from a different and "independent" evaluator.

West Virginia Code, § 27-6A-1, et. al., relates generally to competency and criminal responsibility of persons charged with a criminal offense, and those already convicted. Section 1, of Chapter 27, Article 6A, outlines the qualifications and requirements of evaluators of competency and criminal responsibility:

"(a) For purposes of this article:

12

892

(1) A "qualified forensic psychiatrist" is:

(A) A psychiatrist licensed under the laws in this state to practice medicine who has completed post-graduate education in psychiatry in a program accredited by the Accreditation Council of Graduate Medical Education; and

(B) Board eligible or board certified in forensic psychiatry by the American Board of Psychiatry and Neurology or actively enrolled in good standing in a West Virginia training program accredited by the Accreditation Council of Graduate Medical Education to make the evaluator eligible for board certification by the American Board of Psychiatry and Neurology in forensic psychiatry or has two years of experience in completing court-ordered forensic criminal evaluations, including having been qualified as an expert witness by a West Virginia circuit court.

(2) A "qualified forensic psychologist" is:

(A) A licensed psychologist licensed under the laws of this state to practice psychology; and

(B) Board eligible or board certified in forensic psychology by the American Board of Professional Psychology or actively enrolled in good standing in a West Virginia training program approved by the American Board of Forensic Psychology to make the evaluator eligible for board certification in forensic psychology or has at least two years of experience in performing court-ordered forensic criminal evaluations, including having been qualified as an expert witness by a West Virginia circuit court.

(3) A "qualified forensic evaluator" is either a qualified forensic psychiatrist or a qualified forensic psychologist as defined in this section.

(4) "Department" means the Department of Health and Human Resources.

(b) No qualified forensic evaluator may perform a forensic evaluation on an individual under this chapter if the qualified forensic evaluator has been the individual's treating psychologist or psychiatrist within one year prior to any evaluation order." (WV Code, § 27-6A-1).

Mr. Bostic testified that he has practiced law for 18 years and criminal law for 15 years, and that during this period at various times he served as an assistant prosecutor in Jackson County and Wood County, and that for the rest of the period, he served as

13

893

defense counsel. Petitioner's trial counsel's testimony in this case regarding Petitioner's level of functioning is the most enlightening evidence submitted to this court on that issue. He testified that he never observed any evidence that suggested Petitioner Morgan was not competent to stand trial, and that he discussed this issue with Petitioner. Mr. Bostic testified that Petitioner was totally able to communicate with counsel. (The February 14, 2011, Omnibus Hearing transcript @ 12 through 15).

However, at Petitioner's insistence Mr. Bostic requested an evaluation of the Petitioner for competency and criminal responsibility. The evaluation was conducted on July 16, 2007, the report completed on August 13, 2007, and a hearing held by this Court on September 24, 2007. This Court heard testimony from Dr. Ralph S. Smith, from the Charleston Psychiatric Group, who was appointed to conduct the subject evaluation. Dr. Smith opined to a reasonable degree of psychiatric and psychological certainty that the Petitioner was criminally responsible and was competent to stand trial. This Court specifically finds that Dr. Ralph S. Smith is a "qualified forensic evaluator" and meets all of the "requirements" as set forth in WV Code, § 27-6A-1, and has recognized Dr. Smith as such many times before and since his evaluation of the Petitioner.

So, the Petitioner's argument is not that an evaluation was not requested, conducted, and reported, but that the evaluator, Dr. Smith, is not "independent".

However, Petitioner has not produced any testimony or documentary evidence to support the bold faced allegation that Dr. Ralph S. Smith, from the Charleston Psychiatric Group, is anything but independent. Dr. Smith was not selected by the State of West Virginia, but on the contrary, suggested by this Court and then agreed to

14

894

by the Petitioner's trial counsel. Again, Petitioner's trial counsel's testimony in this case regarding Dr. Smith's status as an independent evaluator is the most enlightening evidence submitted to this court on that issue. Mr. Bostic testified at the February 14, 2011, hearing that indeed he believed that his client was criminally responsible and competent to stand trial. (The February 14, 2011, Omnibus Hearing transcript @ 13, 16, 20, and 31). Mr. Bostic testified that "Ralph Smith, Charleston Psychiatric Group, did probably 90% of the evaluations that I ever had done. And we had him look at Brian, Mr. Morgan." (The February 14, 2011, Omnibus Hearing transcript @ 12). Mr. Bostic then said "he was competent to stand trial. I didn't have any real question of that in my own mind after working with Mr. Morgan, so. I did it because him asking for it, because of the history of him, but I did not find in my own meetings with him and my own question-and–answer sessions with Brian Morgan to lead me to believe that he was not, at minimum, legally competent in any way, so." Mr. Bostic testified that he believed the Petitioner to be criminally responsible as well.

Regarding the allegation that Dr. Smith's evaluation was biased or not independent, Mr. Bostic stated that after participating in many cases with Dr. Smith evaluating his client, and after cross-examining him as many as fifteen times, he believed him to be "independent". (The February 14, 2011, Omnibus Hearing transcript @ 14).

The court is of the opinion that Petitioner has failed to establish that he did not receive effective assistance of counsel in connection with his selection and/or agreement to allow Dr. Smith to conduct the forensic evaluation of the Petitioner.

15

895

Furthermore, there is no evidence whatsoever to justify a second evaluation. Petitioner's argument here simply has no merit.

## Voir Dire and Jury Challenges Raised by Petitioner

As stated above, Petitioner argues that:

j.   the conviction was obtained because the Petitioner's trial counsel failed to challenge the seating of the biased jurors;

See Thomas v. Makani, 218 W.Va. 235, 236, 624 S.E.2d 582, 583 (W.Va.,2005);

Syllabus Point 4. "If a prospective juror makes an inconclusive or vague statement during *voir dire* reflecting or indicating the possibility of a disqualifying bias or prejudice, further probing into the facts and background related to such bias or prejudice is required." Syllabus Point 4, *O'Dell v. Miller,* 211 W.Va. 285, 565 S.E.2d 407 (2002).

Syllabus Point 5. "When considering whether to excuse a prospective juror for cause, a trial court is required to consider the totality of the circumstances and grounds relating to a potential request to excuse a prospective juror, to make a full inquiry to examine those circumstances and to resolve any doubts in favor of excusing the juror." Syllabus Point 3, *O'Dell v. Miller,* 211 W.Va. 285, 565 S.E.2d 407 (2002).

Syllabus Point 6. "A trial judge is entitled to rely upon his/her self-evaluation of allegedly biased jurors when determining actual juror bias. The trial judge is in the best position to determine the sincerity of a juror's pledge to abide by the court's instructions. Therefore, his/her assessment is entitled to great deference." Syllabus Point 12, *State v. Salmons,* 203 W.Va. 561, 509 S.E.2d 842 (1998).

The Petitioner has named two jurors that he believed were biased.

Juror Don Barr was a former co-worker of the victim's step-mother. Not one response from Mr. Barr concerned the court or the trial counsel. He stated that he did not have a friendship beyond work with the step-mother and would not favor witnesses for or against the defendant. He agreed that the State would need to prove guilt beyond a reasonable doubt and indicated that he understood that a finding of not guilty did not mean innocent but could vote that way if the State failed to meet their burden. Again,

16

896

the Petitioner produced no evidence to support the allegation that Mr. Barr was biased. The court cannot now find by a preponderance of the evidence that Mr. Barr was biased simply because he once was a co-worker of the victim's step-mother.

Juror Robert Griffith was told by Mr. Bostic that the case involved sexual abuse of a child. He was then told by Mr. Bostic that most people "have a reaction to that as soon as they hear it. Do you?" Mr. Griffith stated that he didn't know one way or the other. He stated that he himself had four children. He then stated "I don't really think it would, but I can't answer for certain." Mr. Griffith stated that he understood that the Petitioner was presumed to be innocent. He then agreed that the State would need to prove guilt beyond a reasonable doubt and indicated that he understood that a finding of not guilty did not mean innocent but could vote that way if the State failed to meet their burden. Again, the Petitioner produced no evidence to support the allegation that Mr. Griffith was biased. The court cannot now find by a preponderance of the evidence that Mr. Griffith was biased simply because he didn't know how or if he would react when confronted with judging a person accused of sexually abusing a child.

### Child Victim/Witness Issues Raised by Petitioner

As stated above, Petitioner argues that:

    h.    the conviction was obtained because the Petitioner's trial counsel abandoned his motion to examine the victim;

    i.    the conviction was obtained because the Petitioner's trial counsel made no attempt to interview the victim;

Directly after the defendant competency and criminal responsibility hearing held on September 24, 2007, the defense trial counsel, Mr. Bostic, asked to schedule a hearing on witness competency for the child victim, to determine if the child witness

17

competency evaluation was warranted. That issue was scheduled to be heard with the motion for suppression of the Petitioner's statement. Both motions came on for hearing on October 1, 2007. Mr. Bostic was invited to present evidence on that issue but declined, as did the State of West Virginia. The Mr. Bostic requested copies of video/audio recordings taken during the interviews of the child victim and his siblings. Certainly, said recordings would help Mr. Bostic and the court to determine the child victim's competency as a witness. This Court ordered the State of West Virginia to disclose the recordings by October 11, 2007. This Court reviewed the video/audio recordings and believes that said recordings revealed a very credible and convincing child victim that demonstrated that he was competent. Indeed, Petitioner's defense trial counsel, Mr. Bostic, testified on February 14, 2011, in the instant case, that he believed the victim and that the victim's "stories" were the same as what his client, the Petitioner herein, was telling him. He testified that after reading and reviewing the evidence that he "did not believe there was an issue with that", referring to the motion to have the child victim evaluated. Apparently, like this court, Mr. Bostic also believed the video/audio recordings revealed a very credible and convincing child victim that demonstrated that R. M. was competent. (The February 14, 2011, Omnibus Hearing transcript, pp. 32 and 33).

Mr. Bostic initially called the victim's home, identified himself and attempted to arrange a time to speak directly to the victim, but his attempt was thwarted by the victim's step-mother. The victim,        , was interviewed by law enforcement and the recorded interview was provided to Mr. Bostic and the Petitioner. Mr. Bostic testified at the February 14, 2011, Omnibus Hearing that "I believed"        "is telling the truth. I

18

698

believe"      's "stories matched with the things" the Petitioner "was telling me, even though" the Petitioner "was telling me he didn't really do them with criminal intent. And after going over the evidence, I did not believe there was an issue with that. So I did not talk to him." (The February 14, 2011, Omnibus Hearing transcript @ 32).

Petitioner offered no evidence nor can the court find any evidence that the child victim was an incompetent witness. The child witness's testimony at trial was apparently accepted by the Jury as credible and independently corroborated by the results of the search (pornographic photographs of the child, particularly) and testimony of the Petitioner at trial.

The court is of the opinion that Petitioner has failed to establish by a preponderance of the evidence that he did not receive effective assistance of counsel in connection with the child victim not being evaluated for competency as a witness and with the Defense counsel not being able to interview the child victim prior to trial.

<u>Petitioner Testified at Trial</u>

As stated above, Petitioner argues that:

b.      the conviction was obtained because Petitioner's defense counsel failed to protest Petitioner's desire to testify, testimony that had disastrous results;

This court is cognizant of the obligation a trial court judge has before allowing a criminal defendant to testify at his or her trial. See State v. Robinson, 180 W.Va. 400, 401, 376 S.E.2d 606, 607 (W.Va.,1988):

" 3. "A trial court exercising appropriate judicial concern for the constitutional right to testify should seek to assure that a defendant's waiver is voluntary, knowing, and intelligent by advising the defendant outside the presence of the jury that he has a right to testify, that if he wants to testify then no one can prevent him from doing so, that if he testifies the prosecution will be allowed to cross-examine him. In connection with the privilege against self-incrimination, the defendant should also be advised that he has a

19

right not to testify and that if he does not testify then the jury can be instructed about that right." Syllabus point 7, *State v. Neuman,* 179 W.Va. 580, 371 S.E.2d 77 (1988).

This Court made timely and significant inquiry at trial in accordance with *Neuman* and *Robinson.* Both Mr. Bostic and the Petitioner were questioned regarding the Petitioner's voluntary, knowing, and intelligent waiver of his right to not testify on his own behalf. Mr. Bostic properly recited upon the record the Petitioner's rights, the fact that Petitioner had no burden of proof or duty to testify; that his silence could not be held against him; and that the prosecution could not mention the Petitioner's silence in his closing argument. Mr. Bostic advised the Court that he told the Petitioner that the prosecution could cross examine the Petitioner and that her questions were not limited to direct examination, but to anything relevant to the case. Mr. Bostic made it clear that the Petitioner chose to testify and that the Petitioner believed it to be in his best interest to testify.

This Court then made extensive inquiry of the Petitioner himself about his voluntary, knowing, and intelligent waiver of his right to not testify. Petitioner Brian Morgan assured the Court that he was not threatened or coerced or promised anything. He acknowledged that he understood that if his case ended in a conviction he could not then change his mind about testifying. The Petitioner understood that the decision about whether to testify was his and no one else's.

Mr. Bostic testified at the February 14, 2011, Omnibus Hearing that the Petitioner "demanded to take the stand." (The February 14, 2011, Omnibus Hearing transcript @ 22 and 23). Mr. Bostic stated that he would cross examine the Petitioner and that Petitioner could not withstand his cross examination; that he advised the Petitioner that

20

900

he could not guarantee what questions would be asked; and "that I could not save him if he took the stand." Mr. Bostic testified that the Petitioner believed that by testifying he could persuade the jury that what he told the police in his statement/confession was not true or was somehow taken out of context. Mr. Bostic testified that he advised the Petitioner to remain silent and that Petitioner testified against his advice. Mr. Bostic believed that Petitioner's testimony was disastrous. (The February 14, 2011, Omnibus Hearing transcript, p. 22).

Petitioner offered no evidence to contradict that Petitioner understood his right to remain silent at trial; that his waiver of that right was a voluntary, knowing, and intelligent decision; and that Mr. Bostic told the Petitioner that in his opinion testifying was a mistake.

The court finds by a preponderance of the evidence that there is simply no factual basis for the argument propounded by the Petitioner that his trial defense counsel failed to protest Petitioner's desire to testify. Clearly Mr. Bostic tried to stop Petitioner from taking the stand.

For the above stated reasons, this court cannot find, by a preponderance of the evidence, that the Petitioner's trial counsel was ineffective.

### Intrinsic Evidence verses WVRE Rule 404 (b) Evidence

Petitioner further argues that he is entitled to habeas relief, because:

c. the conviction was obtained because there was no hearing upon voluminous WVRE Rule 404(b) evidence introduced at trial, including the Petitioner's masturbation, anal sex with the victim, additional uncharged sexual-assault conduct, threats to the child victim, physical violence towards the child victim, and harassment of the child victim and his siblings;

21

d.      the conviction was obtained because the State of West Virginia was not required to provide notice of the WVRE Rule 404(b) evidence referred to above;

If the evidence is intrinsic to the crimes that are charged by the Indictment, then admissibility is not governed by WVRE 404(b). *See State v. LaRock,* 196 W.Va. 294, 313, 470 S.E.2d 613, 632 (1996). At footnote 29, Justice Cleckley states for the court the following:

FN29. In determining whether the admissibility of evidence of "other bad acts" is governed by Rule 404(b), we first must determine if the evidence is "intrinsic" or "extrinsic." *See United States v. Williams,* 900 F.2d 823, 825 (5th Cir.1990): " 'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." (Citations omitted). If the proffer fits in to the "intrinsic" category, evidence of other     crimes should not be suppressed when those facts come in as *res   gestae*—as part and parcel of the proof charged in the indictment. *See United States v. Masters,* 622 F.2d 83, 86 (4th Cir.1980) (stating evidence    is admissible when it provides the context of the crime, "is necessary to a 'full presentation' of the case, or is ... appropriate in order 'to complete  the story of the crime on trial by proving its immediate context or the "res gestae" ' "). (Citations omitted). It seems doubtful this case could have been presented appropriately without showing when and how the young victim received the injuries that appeared on his body. Evidence the defendant was responsible for all the injuries to the victim would seem to " 'complete the story of the crime.' " *Masters,* 622 F.2d at 86. (Citation      omitted). Indeed, evidence admissible for one of the purposes specified in Rule 404(b) and *res gestae* not always is separated by a bright line. *See United States v. Cook,* 745 F.2d 1311, 1317–18 (10th Cir.1984), *cert. denied,* 469 U.S. 1220, 105 S.Ct. 1205, 84 L.Ed.2d 347 (1985).

In the instant case, the child victim testified at trial that the Petitioner touched his penis with his (Petitioner's) mouth and his "butt" and that he, the victim, saw the Petitioner's penis and the victim witnessed something "white" come out of Petitioner's penis. Then, evidence was admitted of the Petitioner's semen found on the carpet of the basement room where the assaults took place upon the child victim.

22

902

During the testimony of the child victim's step-mother, the jury heard evidence of how the victim's family tried to stop the Petitioner from having any unsupervised time alone with the victim. The jury heard that the Petitioner yelled at the victim's siblings and threatened them when they prevented him from secreting the victim away to be alone with the victim. The jury also heard that once the Petitioner struck the victim when the victim would not acquiesce to the Petitioner's directions. There was no evidence offered by the Petitioner at the habeas hearing to contest the admissibility of the evidence or to contest the reason that the evidence was offered. Conversely, Mr. Bostic, Petitioner's trial attorney, testified that the reason the complained of evidence came in was because it was intrinsic evidence. (The February 14, 2011, Omnibus Hearing transcript, pp. 46 through 52).

The court found this evidence to be intrinsic, reasoning that it was evidence that showed the context of the crime and was necessary to a full presentation of the case. This evidence shows the relationship of the victim to the Petitioner and is appropriate in order to complete the story of the crime on trial by proving its immediate context. These assaults did not occur in a vacuum and the facts and circumstances surrounding the charged assaults helps explain the context of the crimes.

The court finds by a preponderance of the evidence that the evidence complained of by Petitioner did not require a WVRE Rule 404(b) hearing; the evidence was clearly intrinsic evidence of circumstances and facts that shed light upon the crimes alleged; that had overwhelming probative value; and that was *res gestae*.

23

903

For the above stated reasons, this court cannot find, by a preponderance of the evidence, that the Petitioner's trial counsel was ineffective for failing to object to the admissibility of the testimony without a Rule 404(b) hearing.

### Harmless Error or Tactical Examination

As stated above, Petitioner argues that:

k. the conviction was obtained because the Petitioner's trial counsel introduced an additional assault upon the victim at the victim's grandmother's residence;

The State of West Virginia's disclosure of evidence in this matter provided to the Petitioner included evidence that on at least one occasion the victim was sexually assaulted at his grandmother's residence in her garage by the Petitioner.

During direct examination the child victim, the State elicited testimony that the child victim was alone with the Petitioner in Petitioner's basement "junk" room and in his grandmother's garage. The child victim did not recall how many times he was alone with the Petitioner in his grandmother's garage, but he unequivocally remembered being alone there with the Petitioner. The rest of the victim's testimony during direct examination specifically related to being assaulted when alone with the Petitioner in the "junk" room. The victim testified that he was assaulted more than five times (the indictment contained five sexual assault counts). The prosecutor did not come back to the testimony surrounding the garage specifically, but there is a great possibility that an inference was left with the jury that an assault (or assaults) took place in the garage.

24

It is worth stating again that the court found the child victim's testimony to be very credible. Mr. Bostic has since testified that he also found the child victim's video statement that was provided to him in disclosure to be very believable.

On cross examination Mr. Bostic attempted to limit the number of alleged assaults that the child could state took place with certainty. He asked a straight forward leading question that received the expected response: "You do know it occurred at your grandmother's house once, right?" The answer: "Yes". Mr. Bostic then asked a series of questions that limited the location of the remainder of assaults to the "junk" room.

The issue is did Mr. Bostic have a legitimate tactical reason for his inquiry? He attempted to narrow the number of assaults, the time frame when the assaults occurred, and the location where the assaults took place. Certainly, his question and the child's answer limited the number of assaults that a jury could believe took place in the grandmother's garage. Surely that is better than allowing a jury to infer that more than one or even many assaults took place in the grandmother's garage. No evidence was presented at the Omnibus hearing that tends to shows that Mr. Bostic's line of inquiry wasn't reasonable and appropriate in the defense of the Petitioner. See State ex rel. Kitchen v. Painter 226 W.Va. 278, 281, 700 S.E.2d 489, 492 (W.Va.,2010), at Syllabus Point 3:

> "Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." Syllabus Point 21, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974).

25

905

This court finds by a preponderance of the evidence that Mr. Bostic's line of inquiry was effectively assistive of his client's best interests.

However, if the single question to the child victim was not a tactical decision limiting the number of assaults at that one place of opportunity, then the only other possibility is that Mr. Bostic did commit error. If so, did counsel error affect the outcome of the case? See State v. Jacobs, 171 W.Va. 300, 306, 298 S.E.2d 836, 842 (1982), where the West Virginia Supreme Court of Appeals addressed counsel error:

> Our general rule regarding a claim of ineffective assistance of counsel is set out in syllabus point 19 of State v. Thomas, 157 W.Va. 640, 203 S.E.2d 445 (1974):

> In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the West Virginia Constitution and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned counsel's performance by whether he exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law, except that proved counsel error which does not affect the outcome of the case, will be regarded as harmless error.

> We further recognized in Thomas that the burden is on the defendant to prove ineffective assistance by a preponderance of the evidence.

If one assumes that no reasonable defense attorney would have asked the complained of question, then the issue becomes: Was Mr. Bostic's one question harmless, and would the Petitioner have been convicted of the five sexual assault charges regardless of the one question propounded by the Petitioner's trial counsel. It is noteworthy that the prosecutor did not come back to expound upon what the Petitioner's trial counsel allegedly brought to light and served up to the jury. Was it because she believed that she had adequately presented the one "garage" assault already or was it that she did not believe she needed further proof of that one specific

26

906

assault because the evidence of the "junk" room assaults was so overwhelming? The answer may never be known because the Petitioner offered no evidence on this issue.

The court finds that there was overwhelming evidence presented by the State of West Virginia, so much so that the Petitioner would have been convicted of the five sexual assault counts without any evidence offered by either the prosecution or defense regarding the "garage" assault.

The court finds by a preponderance of the evidence that there is simply no factual basis for the argument propounded by the Petitioner that his trial defense counsel erred when he cross examined the child victim. Clearly, Mr. Bostic limited some exposure by limiting the number of opportunities for assault at the grandmother's garage. Even if the single propounded question amounted to counsel error, it was harmless because the evidence against the Petitioner at trial was simply overwhelming. Furthermore, this court finds that Mr. Bostic, at a minimum, "exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law".

For the above stated reasons, this court cannot find, by a preponderance of the evidence, that the Petitioner's trial counsel was ineffective.

Double Jeopardy or Ten Separate Counts ("Units of Prosecution")

As stated above, Petitioner argues that:

I.    the Petitioner's trial counsel should have argued that the indictment, trial, and conviction for ten (10) counts of Possession of Child Pornography "materials" should have been for just (1) count of Possession of Child Pornography "materials", thereby exposing the Petitioner to double jeopardy;

27

The Petitioner was charged with and convicted of ten counts of violating WV Code §61-8C-3, *Distribution and exhibiting of material depicting minors engaged in sexually explicit conduct prohibited; penalty,* which reads as follows:

> Any person who, with knowledge, sends or causes to be sent, or distributes, exhibits, possesses or displays or transports any material visually portraying a minor engaged in any sexually explicit conduct is guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not more than two years, and fined not more than two thousand dollars. (Emphasis added).

Lieutenant Boggs testified at trial that State's Exhibits 12 through 21 were found at the Petitioner's residence in a black box in the basement in the "junk" room. He testified that State's Exhibits 12 and 13 revealed a young male's face, back and buttocks; State's Exhibits 14, 15, 16, 17, 19, 20 and 21 revealed a young male's back and buttocks; and State's Exhibit 18 revealed a young male's face, stomach and penis (Tr., pp. 298 through 305). These items were in the possession of the Petitioner.

The Petitioner testified at trial that he took photographs depicting the child victim that were admitted as State's Exhibits 12, 13, 14, and 21. He testified that he "might have" taken State's Exhibits 15, 16, 17, and 19 (again photographs of the child victim). When asked if he took the photographs depicted in State's Exhibits 18 and 21, Petitioner replied "I don't know." (Id., at pp.429 and 430).

The child victim testified at trial that the Petitioner photographed his "butt" and "penis" with a Polaroid camera until the Polaroid broke. The Petitioner then used a digital camera. The prosecutor laid out the State's Exhibits 12 through 21 (again photographs of the child victim) at trial and asked the child victim to identify the person in the photographs and what was depicted. The victim stated that the photographs

28

908

were of him and they showed "my butt and my penis." He identified the Petitioner as the photographer. (Tr., p. 213).

Petitioner now argues that each photograph taken and possessed by the Petitioner should not be considered as a separate count, but considered in the aggregate as only one count, and that Mr. Bostic was ineffective because he failed to argue the same. Petitioner offered no evidence, statutory authority or case law to support his position. Apparently West Virginia courts have not specifically addressed this issue, but see *State v. Reeves*,144 Wash.App. 422, 431-432, 182 P.3d 491, 496 (Wash.App. Div. 1, 2008):

Courts in other jurisdictions have upheld multiple convictions even where the statute contained a plural listing of prohibited materials. *See State v. Howell,* 169 N.C.App. 58, 62, 609 S.E.2d 417 (2005) (holding that "listing of plural items in the definition of 'material' is merely a matter of style"); *State v. Fussell,* 974 So.2d 1223, 1233 (La.2008) (construing statutes together demonstrates "legislative goal to protect *any single child* from being sexually exploited through the visual reproduction of *any single sexual performance"* ) (emphasis added).

See also *U.S. v. Anson,* 304 Fed.Appx. 1, 4, 2008 WL 4585338; 2 (C.A.2 (N.Y.) (C.A.2 (2008):

"When, as here, the same statutory violation is charged twice, the question is whether the facts underlying each count were intended by Congress to constitute separate 'units' of prosecution." *Id.* In Count 3, the grand jury charged Anson with receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A). Counts 4 through 43 set forth multiple violations of a separate statutory provision, 18 U.S.C. § 2252A(a)(5)(B), possession of child pornography, based on images stored on the hard drive of Anson's computer and on thirty-eight CD-ROMs. Because § 2252A(a)(2)(A) prohibits the receipt of "any child pornography," each pornographic image received could constitute a separate "unit" of prosecution. Similarly, the prohibition of the possession of "any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography," set forth in §2252A(a)(5)(B), lends itself to treating each book, magazine, or other material-in this case a computer hard drive and thirty-nine CD-ROMs-as separate "units" of prosecution. With respect to the possible overlap of Count 3 with Counts 4 through 43, nothing in the indictment indicates that the same image or images underlying the receipt

29

909

charge (Count 3) must also underlie the possession charges (Counts 4 through 43). Accordingly, the indictment did not charge Anson with the same crime in multiple counts.

And finally, *see People v. Renander*, 151 P.3d 657, 662 (Colo.App.,2006):

> Hence, under the statute at issue here, each sexually exploitative image is a permanent record and, therefore, constitutes a discrete act of victimization of the child. *See United States v. Esch*, 832 F.2d 531, 541- 42 (10th Cir.1987) (interpreting federal statute proscribing the use of a child to engage in any sexually explicit conduct for the purpose of producing any "visual depiction," court determined that statute's plain language reflected congressional intent to protect children from abuse inherent in creating permanent records of sexually explicit conduct and, therefore, the allowable unit of prosecution permitted separate charges for each photograph of the same child victim; because each image constituted a discrete unit of prosecution, court dismissed defendant's assertion that all photographs taken during a single photographic session were part of a single criminal episode); *see also Burk v. State*, 705 So.2d 1003, 1004-05 (Fla.Dist.Ct.App.1998) (holding each separate image constituted a unit of prosecution under statute criminalizing the promotion of a sexual performance of a child); *State v. Mather*, 264 Neb. 182, 646 N.W.2d 605 (2002) (holding each individual image constituted a unit of prosecution under statute criminalizing production of any visual depiction of a child engaged in sexually explicit conduct); *Commonwealth v. Davidson*, 860 A.2d 575, 583 (Pa.Super.Ct.2004) (under statute criminalizing possession of child pornography, court held 28 photos constituted 28 separate criminal acts because "[e]ach photograph of each child victimized that child and subjected [the child] to precisely the type of harm the statute seeks to prevent"); *Vineyard v. State*, 958 S.W.2d 834 (Tex.Crim.App.1998) (under statute criminalizing "possession of child pornography," court upheld separate charges for each item of child pornography); *State v. Morrison*, 31 P.3d 547, 556 (Utah 2001) (statute proscribing possession of material depicting sexual conduct of a minor criminalized each individual image of child pornography); *State v. Multaler*, 252 Wis.2d 54, 643 N.W.2d 437 (2002) (holding separate downloaded image files constituted the basis for separate charges under statute criminalizing possession of "any pictorial reproduction" of child pornography).

There are jurisdictions that have taken an opposing view and that may have found that possession of these ten photographs constitute a single act, but as stated, there is no binding precedent in West Virginia. This court is of the opinion that our statutes protecting children from exploitation are interpreted to mean that possession of each photograph is a separate act and is a distinct and separate unit of prosecution

30

910

allowing the State of West Virginia to charge separate counts and prosecute each act of possession.

While it is true that Mr. Bostic did not make the argument Petitioner now asserts, this court finds that Mr. Bostic certainly "exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law" in relation to the instant allegation made by Petitioner. The argument first made by Petitioner in habeas corpus does not have merit.

For the above stated reasons, this court cannot find, by a preponderance of the evidence, that the Petitioner's trial counsel was ineffective.

### Dr. Ralph Smith's Post-Trial Report

As stated above, Petitioner argues that:

f.      Dr. Ralph Smith should not have conducted the competency and criminal responsibility evaluation, *and* the post-trial report contemplated by WV Code § 62-12-2(e);

W. Va. Code, § 62-12-2, *Eligibility for probation,* requires that a convicted sex offender such as the Petitioner undergo a physical, mental and psychiatric study and diagnosis prior to consideration for probation, and states in pertinent part:

(e) In the case of any person who has been found guilty of, or pleaded guilty to, a violation of the provisions of section twelve, article eight, chapter sixty-one of this code, the provisions of article eight-c or eight-b of said chapter, or under the provisions of section five, article eight-d of said chapter, such person shall only be eligible for probation after undergoing a physical, mental and psychiatric study and diagnosis which shall include an on-going treatment plan requiring active participation in sexual abuse counseling at a mental health facility or  through some other approved program: *Provided,* That nothing disclosed  by the person during such study or diagnosis shall be made available to any law-enforcement agency, or other party without that person's consent, or admissible in any court of this state, unless such information disclosed shall indicate the intention or plans of the probationer to do harm to any person, animal, institution or property, in which case such information may be released only to such persons as might be necessary for protection of the said person, animal, institution or property.

31

911

As stated before, this Court specifically finds that Dr. Ralph S. Smith is a "qualified forensic evaluator" and meets all of the "requirements" as set forth in WV Code, § 27-6A-1, and has recognized Dr. Smith as such many times before and since his post-trial evaluation of the Petitioner. Dr. Smith's post-trial report was insightful and helpful to this court when considering the appropriate sentence for the Petitioner. Simply disagreeing with the contents of the report or with the selection of Dr. Smith as an evaluator is not a valid basis for the Petitioner to receive any relief. Petitioner has not sighted any legal basis or offered any evidence upon which relief could be considered. Attacking the utilization of Dr. Smith to perform this mandated evaluation is not a compelling argument.

Mr. Bostic did not make the argument Petitioner now asserts and this court can find no reason why he should have. This court finds that Mr. Bostic certainly "exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law" in relation to the instant allegation made by Petitioner.

For the above stated reasons, this court cannot find, by a preponderance of the evidence, that the Petitioner's trial counsel was ineffective.

This court has fully addressed and resolved all of the grounds for relief set forth in the original and Amended Petition filed in this case.

## ORDER

Based on the foregoing Findings of Fact and Conclusions of Law, it is ADJUDGED and ORDERED as follows:

32

912

That the Petition and the Amended Petition for a Writ of Habeas Corpus *ad subjiciendum* sought by the Petitioner Morgan are hereby denied and overruled;

That this civil action is dismissed, with prejudice;

That the court finds that the defendant has knowingly and intentionally, with the advice of counsel, waived and forever relinquished all grounds for habeas corpus relief not asserted in this Omnibus Habeas Corpus Proceeding;

That the clerk shall deliver attested copies of this order to Roger Williams, counsel for Respondent and to Matthew A. Victor, counsel for Petitioner; and

That this is a final order and the clerk shall remove this action from the active docket of the court.

All of which is **ORDERED**, accordingly.

ENTERED: November 17, 2011

Thomas C. Evans, III, Circuit Judge
Fifth Judicial Circuit
State of West Virginia

A TRUE COPY, CERTIFIED THIS THE

NOV 17 2011

Bruce W.D. Johnson
CLERK OF THE COURT
OF JACKSON COUNTY WEST VIRGINIA

33

ENTERED THE _17th_ DAY OF
_NOV 2011_
ORDER BOOK _107_ PAGE
_209_

913